UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LORENZO T. JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-CV-1634 NAB |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Lorenzo Jackson's application for supplemental security income under the Social Security Act, 42 U.S.C. § 416 *et seq.* Jackson alleged disability due to schizophrenia, pain/numbness in lower back, and knee problems. (Tr. 150.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcripts and the medical evidence. The Court heard oral argument in this matter on December 7, 2017. For the reasons set forth below, the Court will affirm the Commissioner's final decision.

**I.  Issues for Review**

Jackson presents three issues for review. First, Jackson contends that the ALJ failed to properly evaluate the difference between limited and occasional contact with others in determining that there were jobs in the national economy that he could perform. Second, Jackson asserts that the ALJ did not properly evaluate the opinion evidence given by Dr. Dinu

Gangure, Jackson's treating psychiatrist. Finally, Jackson states that the ALJ erroneously discounted his mother's third-party statement by evaluating it like a medical statement. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## II. Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### III. Discussion

#### A. Opinion Evidence

First, the Court will address Jackson's assertion that Dr. Gangure's medical opinion should have been given more weight. Dr. Gangure treated Jackson for approximately a year between April 2014 and August 2015. (Tr. 371-407, 471-72). Dr. Gangure diagnosed Jackson with schizoaffective disorder and alcohol dependence in self-reported sustained remission. Dr. Gangure's treatment notes indicated that Jackson's mental health remained stable with little to no side effects from his medication. The treatment notes indicate an overall improvement in Jackson's mental health during his treatment. Dr. Gangure completed a medical source statement in September 2014, which stated that Jackson had moderate to marked limitations in the ability to maintain a work schedule and be consistently punctual; understand, remember, and carry out detailed instructions and procedures; and accept instructions and respond appropriately

3

to criticism from supervisors or co-workers. (Tr. 367.) Dr. Gangure opined that Jackson had a marked limitation in the ability to sustain extended periods of employment (greater than 6 months) without decompensation from periodic exacerbation of psychiatric symptoms. (Tr. 367). According to the form, a moderate limitation indicated that the activity was not totally precluded, but is significantly impaired in terms of proficiency or the ability to sustain the particular activity over the course of a work day or week. (Tr. 367.) A marked limitation was defined as "a complete inability to perform the particular activity in a normal work setting even for short periods of time." (Tr. 367.) Dr. Gangure also wrote the following statement: "Patient has significant limitations in functioning in more than one setting (e.g. work, relations with others) in the context of serious and persistent mental illness. The limitations would very likely preclude him from maintaining sustained full time competitive employment at this time." (Tr. 368). On May 16, 2015, Dr. Gangure provided another letter that included the identical written statement from the September 2014 medical opinion. (Tr. 403.)

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite impairments and physical or mental restrictions. 20 C.F.R. § 416.927(a)(2)[1]. All medical opinions, regardless of the source, are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to

---

[1] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. § 416.927, the court will use the regulations in effect at the time that this claim was filed.

4

support or contradict the opinion. 20 C.F.R. § 416.927(c). Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

The ALJ gave the written statements from Dr. Gangure minimal weight, because he stated that the severe limitations were inconsistent with his own treatment notes and Dr. Gangure's schizoaffective diagnosis was questionable. (Tr. 20.) Jackson contends that these were not good reasons to discredit Dr. Gangure's opinion. Plaintiff states that the ALJ failed to list or evaluate any of Dr. Gangure's findings that supported the medical opinion. Plaintiff asserts that the ALJ "succumbed to the temptation to play doctor."

After a review of the evidence in the record as a whole, the Court finds that the ALJ did not err in giving minimal weight to the written statements regarding Jackson's work related limitations. The ALJ's conclusion is supported by substantial evidence. There is no support for the marked limitations in Dr. Gangure's medical opinion. Jackson has some limitations caused by his mental illness, but the severity contained in Dr. Gangure's opinion is not supported by his own treatment notes or any other objective medical evidence.

B.  **Third-Party Evidence**

Next, Jackson asserts that the ALJ committed reversible error by giving little weight to Jackson's mother's statement, because she was not an acceptable medical source. In Jackson's mother's statement she describes her observations of his daily activities and physical and mental abilities. (Tr. 159-67.) The ALJ gave Jackson's mother's statement little weight, because she was "not an acceptable medical source and [her] testimony is based upon casual observation, rather than objective medical examination and testing. Further, her testimony does not outweigh the accumulated medical evidence regarding the extent to which the claimant's impairments limit his functional abilities." (Tr. 21.)

The Court finds that the ALJ committed error when he evaluated the mother's third-party statement in the context of acceptable medical sources, but the error was harmless. The ALJ is required to carefully consider any information submitted by a claimant about his symptoms, including observations by other persons. 20 C.F.R. § 416.929(c)(3). The ALJ can use information from other sources to show the severity of a claimant's impairments and how it affects a claimant's ability to work. 20 C.F.R. § 416.913(d). "[Information] from such other sources may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at *2 (Aug. 9, 2006).

Here, as noted by the ALJ, the function report submitted by Jackson's mother outlines a similar level of function as the function report provided by Jackson. (Tr. 21, 159-67.) In *Ostronski*, the Eighth Circuit found it "acceptable" for the ALJ to reject the testimony of the claimant's mother, sister and husband where the witnesses were not qualified to render an

opinion on the claimant's ability to work, their testimony merely corroborated the claimant's testimony, and their testimony conflicted with the medical evidence regarding the claimant's functional capacities. *Ostronski v. Chater* , 94 F.3d 413, 419 (8th Cir. 1996). In this case, while the ALJ erred, reversal and remand is not required if the ALJ's error was harmless and did not affect the outcome of the claim. To show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided the case differently if the error had not occurred. *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). There is no indication that the ALJ would have decided this action differently if he had given the statement more weight; therefore a reversal and remand is not required. *Id.*

### C. Step Five Analysis

Finally, Jackson contends that the ALJ erred by failing to question the vocational expert regarding whether Jackson could have limited contact with others. An ALJ's hypothetical question must fully describe a claimant's impairments. *Chamberlain v. Shalala*, 47 F.3d 1489, 1495 (8th Cir. 1995). These impairments must be based on the "substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments." *Jones v. Astrue*, 619 F.3d 963, 972 (8th Cir. 2010). If the hypothetical question is properly formulated, then the testimony of the vocational expert constitutes substantial evidence. *Roe v. Chater*, 93 F.3d 672, 676 (8th Cir. 1996).

A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton*, 92 F.3d at 694-695. "An expert's testimony based upon an insufficient hypothetical question may not constitute substantial evidence to support a finding of no disability. *Newton*, 92 F.3d at 695. An error in posing the hypothetical question may be harmless, however, if there is no conflict with

7

the VE's testimony and the DOT or there is no indication that the ALJ would have decided the case differently.  *See Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (ALJ error harmless where ALJ misread doctor's handwriting regarding whether claimant could "walk" or "work," because no indication that ALJ's decision would be different had he read the doctor's note correctly); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (ALJ error in failing to ask VE about possible conflicts between testimony and DOT harmless, since no conflict existed).

In this case, Dr. Geoffrey Sutton, an agency consultant, provided an opinion regarding Jackson's work related abilities.  (Tr. 66-69.)  In that opinion, Dr. Sutton opined that Jackson "appears to have the capacity to interact with others on a limited basis."  (Tr. 69.)  The ALJ gave Dr. Sutton's opinion great weight.  (Tr. 20-21.)  The vocational expert testified that a hypothetical individual with Jackson's age, education, and work experience with no exertional limitations, limited to performing simple routine tasks, with occasional workplace changes, occasional interaction with supervisors and co-workers, and no interaction with the general public could perform work as a kitchen helper, laundry worker, or packager.  (Tr. 53-55.)  Jackson contends that there is a difference between the words "limited" and "occasional;" therefore, the ALJ's use of Dr. Sutton's opinion as a basis for the hypothetical question to the vocational expert is flawed.

Jackson has cited no legal authority that Dr. Sutton's use of the word limited is inconsistent with the use of the term occasional in the social security regulations or the ALJ's hypothetical question.  The Court finds that there is no inconsistency and the vocational expert's testimony is supported by substantial evidence.

**IV. Conclusion**

A review of the record as a whole demonstrates that Jackson had some restrictions in his functioning and ability to perform work related activities during the relevant time period, however, he did not carry his burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 18.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 7th day of December, 2017.

                                           /s/ Nannette A. Baker
                                           NANNETTE A. BAKER
                                           UNITED STATES MAGISTRATE JUDGE